Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Paul Bastian, OSB No. 062706
paulbastian@civilrightsoregon.com
POST BURGESS
3835 NE Hancock St., Suite 102
Portland, OR 97212
Tel: (971) 442-9303
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ANTONIO GAINES, | Case No.  3:26-cv-1671 |
| Plaintiff, | **COMPLAINT** |
| | UNLAWFUL EMPLOYMENT ACTION |
| v. | Title VII Discrimination, Retaliation, and supplemental state law claims |
| MULTNOMAH COUNTY, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## I. PRELIMINARY STATEMENT

1.      Plaintiff brings this action to remedy violations of Plaintiff's statutory rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, as well as supplementary state claims. Plaintiff seeks equitable relief as well as attorneys' fees and costs.

## II. JURISDICTION

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. §1343, civil rights jurisdiction.

PAGE 1 – COMPLAINT

3.      Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

4.      On May 13, 2025, Plaintiff complied with the Oregon Tort Claims Act by sending a Notice of Tort Claim by email, first-class mail, and certified mail to Multnomah County Risk Management and Multnomah County Counsel, asserting claims against Multnomah County.

5.      On or about June 12, 2025, Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries Civil Rights Division (BOLI CRD), Case Number EEEMSX2506l2-l0959, alleging unlawful employment practices.

6.      Oregon BOLI CRD co-filed Plaintiff's complaint with the Equal Employment Opportunity Commission (EEOC), Case Number 38D-2025-0049.

7.      On May 14, 2026, BOLI CRD issued a Notice of Right to File a Civil Suit for Case Number EEEMSX2506l2-l0959. On June 3, 2026, the EEOC issued a right-to-sue letter in Case No. 38D-2025-00491.

8.      Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District.

### III. <u>PARTIES</u>

9.      Antonio Gaines, hereafter "Plaintiff", is a citizen of the United States. At all times material, Plaintiff worked for Defendant in Multnomah County, Oregon.

10.     Defendant Multnomah County (hereafter "Defendant") is a political subdivision of the State of Oregon.

PAGE 2 – COMPLAINT

11.     At all times relevant, Defendant's employees and supervisors, as their conduct is alleged herein, were acting within the course and scope of their employment with the defendant.

## IV. GENERAL FACTUAL ALLEGATIONS

12.     On or about March 16, 2016, Plaintiff went to work for Defendant. Plaintiff is an African American employee of Defendant.

13.     Plaintiff is a professional healthcare administrator. While working for Defendant, Plaintiff pursued an MBA in healthcare administration.

14.     On or about April 1, 2024, Defendant promoted Plaintiff into the position of Deputy Director of Corrections Health. As Deputy Director of Corrections Health, Plaintiff's assignment was to oversee all operational and administrative tasks related to supporting clinical staff providing healthcare at Defendant's three correctional facilities: the Multnomah County Detention Center (MCDC), the Donald E. Long Juvenile Facility, and the Inverness Jail. As Deputy Director of Corrections Health, his assignment was to oversee all operational and administrative tasks related to supporting clinical staff.

15.     When Plaintiff stepped into the role of Deputy Director of Corrections Health, Multnomah County's jails had a history of inmate deaths. That history of inmate death preceded Plaintiff's promotion into the Deputy Director position.

16.     On November 23, 2024, Cristin Rettler, PA, emailed Valdez Bravo, the Director of Corrections Health, writing, "concerning sexually predatory behavior on a supervisory level from Tony Gaines. Leslie Fisher reported to me that when Tony was her boss at SE County Clinic, she repeatedly had sexual relations with him in his office on no less than five occasions in the form of oral sex. . . . He pressured Leslie into this behavior by stating, "It's all about the experience." Leslie [Fisher] became aware that he was also having sexual relations at work with

PAGE 3 – COMPLAINT

at least two other colleagues who were Medical Assistans [sic] in the clinic. One of those MA's also now works under Tony at JDH, Niyia Batugo. Leslie [Fisher] then applied for a transfer. When she was no longer reporting to him, she states she filed an HR report about his sexual relations with the Medical Assistants but did not at that time report her own victimization. . . . I am very concerned about this predatory behavior towards multiple women from a man in power at Multnomah County. Per protocol, I am reporting this to you . . ."

17.    On December 9, 2024, Cristin Rettler wrote Shelly Kent. She wrote, "I have recently heard that Niyia [Batugo] refers to Tony as her "boyfriend," so it is possible that the relationship is ongoing. One of the direct report MA's (sic)Tony was having sexual relations with (besides Niyia) at SE Medical Center is named Daisy."

18.    On or about December 9, 2024, Plaintiff experienced an adverse employment action. At 2:52 p.m., Susan Yee, Human Resources Business Partner and Human Resources Manager, and James Opoka, Defendant's Labor Relations Manager, called Plaintiff into a meeting room in the Inverness Jail. Ms. Yee told Plaintiff that Multnomah County was placing him on administrative leave and handed Plaintiff a letter placing him on leave. Ms. Yee said that the reason Multnomah County was placing him on leave was due to a complaint made by another employee that Plaintiff either was in or had been in an intimate relationship with an employee in his line of supervision. Ms. Yee did not specify who the employee was that Plaintiff was allegedly intimate with or who made the complaint. Plaintiff told Ms. Yee that the allegation was untrue, that he was not in an intimate relationship with an employee he supervised, and that if he had been or intended to be in an intimate relationship with an employee he supervised, he would have notified Multnomah County.

PAGE 4 – COMPLAINT

19.     After Ms. Yee and Mr. Opoka told Plaintiff they had placed him on administrative leave, they instructed him not to perform his duties, not to access email while on administrative leave, to turn in his employee badge, the County laptop, and the County telephone. Ms. Yee and Mr. Opoka directed Plaintiff to leave the building and instructed him not to return to any County buildings, even those unrelated to corrections and corrections health. Their directive prohibited him from entering a County library to borrow a book.

20.     Multnomah County treated Plaintiff like a perpetrator of sexual misconduct at work based solely on a rumor. Comparators to him who work for Multnomah County who are Caucasian have not been placed on administrative leave or removed from the workplace based on such flimsy allegations.

21.     Plaintiff's privacy was repeatedly invaded when his administrative leave status became widely known at work and in the community. The rumor mill kicked into high gear after Multnomah County removed him from the workplace. False reports of misconduct became widespread, and Plaintiff heard County employees thought he was on administrative leave due to misconduct. The leave harmed his reputation with other County employees.

22.     Between December 9, 2024, and March 30, 2025, Plaintiff sent emails to Ms. Yee inquiring about the status of the investigation and responding to questions from the investigator about the accusations against him. During the investigation process, Plaintiff began to learn details about the complaints made about him, which were of sexual misconduct and were racially biased. Plaintiff also learned that, in addition to sexual misconduct, the scope of the investigation had been expanded to include an examination of his work performance.

23.     While on administrative leave, Plaintiff learned that Ms. Rettler, a Caucasian physician's assistant, had emailed Mr. Bravo, falsely accusing Plaintiff of being a sexual

PAGE 5 – COMPLAINT

predator at work. Plaintiff was also informed that Ms. Rettler used racially derogatory speech about him when communicating with other employees.

24.    Before December 9, 2024, Plaintiff had little or no contact with Ms. Rettler. Ms. Rettler did not have first-hand knowledge on which to base her allegations of misconduct. Ms. Rettler based her false accusations about him not on her knowledge but on rumor or gossip.

25.    Ms. Rettler also accused Plaintiff of improperly using his position as a member of an interview panel to sabotage or prevent Leslie Fischer from obtaining employment with Defendant. Ms. Rettler had no direct knowledge of the hiring decision or the interview panel's deliberations.

26.    Defendant investigated that allegation. Plaintiff was one of five employees who participated on the interview panel. Plaintiff was the only person of color on the interview panel. The hiring manager and every other panelist interviewed during Defendant's investigation confirmed that Plaintiff made no negative comments concerning Ms. Fischer before, during, or after the interview process. The hiring manager further confirmed that she alone made the hiring decision and selected another candidate based upon that candidate's qualifications, references, and leadership experience. Defendant's investigation therefore concluded there was no evidence Plaintiff improperly influenced the hiring process or hindered Ms. Fischer's employment opportunities.

27.    Ms. Rettler's false claims and Defendant's decision to place Plaintiff on administrative leave harmed him. His reputation in the community declined due to adverse publicity over Multnomah County barring him from the workplace. The administrative leave alone caused him great embarrassment. On December 31, 2024, a news article was published by the Willamette Week inaccurately linking him to jail deaths. The Willamette Week reporter who

PAGE 6 – COMPLAINT

authored the news story wrote: "Multnomah County has lost yet another top jail official, WW has learned. Corrections Health deputy director Tony Gaines, who was just promoted to the post in April, has been on administrative leave since December 9. County officials won't say why. The long, short-staffed division has been in turmoil following an unprecedented series of 11 inmate deaths in recent years." The Willamette Week article deceptively implied that Multnomah County placed him on administrative leave and his position was "lost" because of the jail deaths.

28.     While Plaintiff was on administrative leave and barred from entering County buildings, Plaintiff diligently and repeatedly attempted to engage with Human Resources and Defendant's investigative team via email. On January 21, 2025, Plaintiff emailed Susan Yee, Shelly Kent, and the Multnomah County Complaints Investigation Team (CIU). He received no response to his email.

29.     The embarrassment of the forced administrative leave and worry over his reputation and future employment took a toll on Plaintiff's mental health. On or about March 7, 2025, Plaintiff informed Multnomah County that he would be taking medical leave to deal with the toll on Plaintiff's mental health caused by this issue.

30.     The accusation of misconduct caused Plaintiff to suffer from severe emotional distress, which caused Plaintiff's physician to place him on medical leave temporarily.

31.     On March 20, 2025, while Plaintiff was off work on approved medical leave, Ms. Yee contacted Plaintiff and notified him that the investigation results had come in and that she would send them to him, but did not specify whether he had been cleared of the allegations against him.

32.     On March 24, 2025, Shelley Kent emailed Plaintiff a copy of the investigation findings. Ms. Kent wrote that "CIU will keep a separate record of the investigation." The

PAGE 7 – COMPLAINT

findings determined no credible basis to conclude that Plaintiff engaged in misconduct or violated any Multnomah County Personnel Rule. According to witness accounts, the allegations of misconduct were unsubstantiated and primarily based upon rumors and gossip rather than actual knowledge. Defendant Multnomah County required Plaintiff to submit a return-to-work letter from his physician before returning to work.

33.    When Plaintiff reviewed the findings, he learned there was no credible basis to conclude that he had engaged in misconduct or violated any Multnomah County Personnel Rule. According to witness accounts, the allegations against him by Ms. Rettler were unsubstantiated and primarily based on rumors and gossip rather than her observations or other first-hand knowledge.

34.    On April 1, 2025, Plaintiff returned to work at the Donald E. Long Building Juvenile Detention Center, as the Deputy Director of Corrections Health. Since returning to work on April 1, 2025, Plaintiff has repeatedly been directed to attend meetings with Multnomah County officials. These meetings were about Multnomah County engaging in risk mitigation rather than genuine offers of workplace support to him. On April 2, 2025, Plaintiff was directed to attend a meeting with the Human Resources Director, Ms. Yee. Additionally, on April 2, 2025, he was directed to attend a separate meeting with Jonathan Wexler, the Employment Engagement Manager.

35.    On April 3, 2025, Plaintiff met with CIU Manager Shelly Kent and CIU Liaison Drew Bibee. On April 3, 2025, in his conversation with Shelly Kent and Drew Bibee, Shelley Kent informed Plaintiff that Multnomah County had cautioned Ms. Rettler that her statements about Plaintiff were inappropriate. Plaintiff informed them that he had serious concerns about

PAGE 8 – COMPLAINT

Multnomah County's decision to place him on administrative leave, as racially charged comments were made about him by Ms. Rettler, and that his reputation had been harmed.

## FIRST CLAIM FOR RELIEF

### (Title VII Civil Rights Act of 1964, 42 U.S.C. §2000e-2)

### Race Discrimination

36.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

37.     At all material times, Defendant was an employer within the meaning of 42 U.S.C. § 2000e (b).

38.     Defendant discriminated against Plaintiff with respect to the terms and conditions of his employment because of Plaintiff's race.

39.     Plaintiff is entitled to equitable relief and damages as set forth below.

## SECOND CLAIM FOR RELIEF

### (Title VII Civil Rights Act of 1964, 42 U.S.C. §2000e-2)

### Retaliation

40.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

41.     At all material times, Defendant was an employer within the meaning of 42 U.S.C. § 2000e (b).

42.     Defendant retaliated against Plaintiff with respect to the terms and conditions of his employment because Plaintiff opposed unlawful race discrimination.

43.     Plaintiff is entitled to equitable relief and damages as set forth below.

PAGE 9 – COMPLAINT

## THIRD CLAIM FOR RELIEF

### (Unlawful Employment Practice – ORS 659A.030(1)(b))

### Race Discrimination

44.    Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

45.    In violation of ORS 659A.030(1)(b), Defendant discriminated against Plaintiff with respect to the terms and conditions of his employment because of Plaintiff's race.

46.    Plaintiff is entitled to equitable relief and damages as set forth below.

## FOURTH CLAIM FOR RELIEF

### (Unlawful Employment Practice – ORS 659A.030(1)(g))

### Retaliation

47.    Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

48.    In violation of ORS 659A.030(1)(g), Defendant discriminated and retaliated against Plaintiff with respect to the terms and conditions of his employment because Plaintiff opposed Defendant's race discrimination against Plaintiff.

49.    Plaintiff is entitled to equitable relief and damages as set forth below.

## FIFTH CLAIM FOR RELIEF

### (Title VII Civil Rights Act of 1964)

### (Gender Discrimination – 42 USC §2000e-2)

50.    Plaintiff alleges all prior relevant paragraphs as if fully set forth herein.

51.    At all material times, Defendant was an employer within the meaning of 42 USC § 2000e (b).

52.    Defendant discriminated against Plaintiff with respect to the terms and conditions of his employment, including because of Plaintiff's gender and sex as alleged. Plaintiff is male.

PAGE 10 – COMPLAINT

Defendant subjected Plaintiff to adverse employment action based upon unsubstantiated allegations concerning purported sexual conduct with female employees. Plaintiff alleges that Defendant's response to those allegations and its treatment of Plaintiff were influenced by his sex and gender, including sex-based assumptions concerning Plaintiff's alleged conduct toward female employees.

53.    As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer economic and non-economic damages in an amount to be proved at trial.

54.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

55.    Plaintiff is entitled to post-judgment interest on all damages, costs and attorneys' fees from the date of judgment until the date paid.

56.    Pursuant to 42 USC § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

57.    Plaintiff also seeks an award for such additional relief as justice may require.

## SIXTH CLAIM FOR RELIEF

### (Gender discrimination - ORS 659A.030 (1)(b))

58.    Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

59.    Defendant is an "employer" within the meaning of ORS 659A.001(4) and ORS 659A.030.

60.    There is substantial evidence that Plaintiff was subjected to different terms and conditions of employment based on gender in violation of ORS 659A.030(1)(b). In violation of

PAGE 11 – COMPLAINT

**Post Burgess**
Trial Attorneys
3835 NE Hancock St., Suite 102
Portland, Oregon 97212
(971) 442-9303

ORS 659A.030 (1), Defendant discriminated against Plaintiff with respect to the terms and conditions of their employment because of Plaintiff's gender.

61.    As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer, economic and non-economic damages. Plaintiff is entitled to damages, attorney fees, costs, and interest as alleged below.

## DAMAGES

1.    As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of his personal dignity and right to be free from discrimination or interference with his statutory rights. Plaintiff suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

2.    Plaintiff is entitled to compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in an amount to be proved at trial.

3.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

4.    Plaintiff is entitled to post-judgment interest on all damages, costs and attorneys' fees from the date of judgment until the date paid.

5.    Pursuant to 42 U.S.C. § 2000e-5, ORS 659A.885 and ORS 20.107, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

6.    Plaintiff also seeks an award for such additional relief as justice may require.

PAGE 12 – COMPLAINT

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against defendant:

1.      A sum which will fully compensate Plaintiff for Plaintiff's non-economic damages in a sum that is just as determined by a jury;

2.      A sum which will fully compensate Plaintiff for Plaintiff's economic damages in a sum that is just as determined by a jury;

3.      Equitable relief;

4.      Plaintiff's costs and disbursements incurred herein;

5.      Plaintiff's attorney fees; and

6.      For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: August 10, 2026

**Snyder, Post and Burgess**

*s/ Paul Bastian*
Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Paul Bastian, OSB No. 062706
paulbastian@civilrightsoregon.com
POST BURGESS
3835 NE Hancock St., Suite 102
Portland, OR 97212
Tel: (971) 442-9303
Attorneys for Plaintiff

PAGE 13 – COMPLAINT